UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-192-F

| | | |
|---|---|---|
| NUTRITION & FITNESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| PROGRESSIVE EMU, INC. and | ) | |
| CHRIS BINKLEY, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the Motion for Temporary Restraining Order, Preliminary Injunction, or in the Alternative, Motion for Expedited Discovery [DE-11] filed by Plaintiff Nutrition & Fitness, Inc. ("NFI") against Defendants Progressive Emu, Inc. ("Pro Emu") and Chris Binkley ("Binkley").

## I. DISCUSSION

### A. Motion for Temporary Restraining Order

On April 11, 2012, NFI brought suit against Pro Emu and Binkley alleging, *inter alia*, breach of contract stemming from the Sales, Marketing, and Operating Agreement ("Agreement") in which Pro Emu agreed to supply NFI with emu oil for production of various emu-based products. NFI moves, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, for a temporary restraining order seeking to enforce the terms as set forth in the Agreement.

Rule 65 of the Federal Rules of Civil Procedure govern the issuances of injunctions and restraining orders. Specifically, Rule 65(b)(1) states:

> The court may issue a temporary restraining order without written or oral notice to

> the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed.R.Civ.P.65(b)(1). The substantive standards for granting a request for a temporary restraining order and entering a preliminary injunction are the same. *See, e.g., Commonwealth of Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir. 1994) (applying preliminary injunction standard to a request for temporary restraining order). In order for such injunctive relief to be granted, the movant must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). All four requirements must be satisfied. *Real Truth About Obama, Inc., v. Federal Election Com'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds* 130 S.Ct. 2371 (2010), *reinstated in relevant part on remand* 607 F.3d 355 (4th Cir. 2010) (per curiam).

NFI, in support of its claims that it will suffer irreparable harm without injunctive relief, submits a declaration from Larry Chriscoe ("Chriscoe"), President/CEO of NFI. In the affidavit, Chriscoe claims that Pro Emu is able to supply the requested amount of emu oil to NFI, in light of its increased inventory of live emu birds, but has declined to do so. *See* [DE-12-1], Chriscoe Decl., ¶¶ 9, 11-13, 27. Chriscoe alleges that Pro Emu may be preparing to or is already selling emu oil to unknown third parties and promoting its own emu-based products to NFI's clients in violation of the Agreement entered into by both parties. [DE-12-1], Chriscoe Decl., ¶13. Furthermore, Chriscoe

2

contends that there is a growing shortage of emu oil in the market and that there is a very high probability that NFI will not be able to secure enough oil to fill future orders. *See* [DE-12-1], Chriscoe Decl., ¶16-18. Chriscoe claims that it will lose key clients which it may never be able to reestablish and will suffer severe damage to its reputation in the emu-based products market. *See* [DE-12-1], Chriscoe Decl., ¶22-23. Chriscoe also states that, even if NFI is able to purchase emu oil from another outside source, the price it may have to pay is significantly higher than the price set forth in the Agreement. [DE-12-1], Chriscoe Decl., ¶24. According to the declaration, Chriscoe questions Pro Emu's ability to satisfy any monetary judgment in light of its current financial difficulties. *See* [DE-12-1], Chriscoe Decl., ¶25.

In its motion, NFI echoes Chriscoe's declaration and reiterates two main forms of damage that it deems irreparable. First, NFI contends that it will lose its market share and reputation in the emu-based products business as a result of not being supplied the requested emu oil from Pro Emu. *See* [DE-12], Mot. for TRO, PI, and Exp. Disc., p. 12. NFI claims that retailers rarely carry more than one emu-based product. *See* [DE-12], Mot. for TRO, PI, and Exp. Disc., p. 12. Therefore, NFI argues that, if it cannot obtain adequate emu oil from Pro Emu, then it will not be able to produce enough products to fill orders requested by retailers. *See* [DE-12], Mot. for TRO, PI, and Exp. Disc., p. 12. As a result, NFI claims that its emu-based products will be replaced by ones from competitors, and it will be difficult or impossible for NFI to recapture the lost share of the market. *See* [DE-12], Mot. for TRO, PI, and Exp. Disc., p. 12-13. NFI also argues that its reputation will be irreparably damaged as its clients and potential consumers learn that NFI cannot supply its emu-based products. *See* [DE-12], Mot. for TRO, PI, and Exp. Disc., p. 13. Second, NFI argues that Pro Emu will likely be unable to pay damages that will adequately compensate for NFI's loss should it recover a

3

monetary judgment against Pro Emu due to its financial difficulties. *See* [DE-12], Mot. for TRO, PI, and Exp. Disc., p. 13.

Based on the record at this time, the court finds that NFI has not clearly shown that it will suffer irreparable harm without the issuance of a temporary restraining order. The court recognizes that NFI may suffer a loss in sales as a result of Pro Emu's purported refusal to supply the needed emu oil to manufacture its products. However, any such damage may be redressed through a monetary judgment and therefore cannot be characterized as irreparable. *See Hughes Network Sys., Inc. v. Interdigital Communications Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) (harm not irreparable if it can be compensated by money damages during the normal course of litigation).

In regards to market share, although NFI claims that it will lose its market share in the emu-based products business as a result of not being supplied adequate amounts of emu oil from Pro Emu for production, the court finds that such loss is speculative, at best, and NFI fails to provide any evidence to support such a proposition. *See Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F.Supp.2d 527, 532 (D.Md. 2010) (stating that "mere speculation about possible market share losses is insufficient evidence of irreparable harm."); *see Southtech Orthopedics, Inc. v. Dingus*, 428 F.Supp.2d 410, 418 (E.D.N.C. 2006) (purely economic injury, such as that resulting from lost sales, profits, or market share does not equate to irreparable harm sufficient garner the need for injunctive relief); *see, e.g., Z-Man Fishing Products, Inc. v. Renosky*, 790 F.Supp.2d 418, 423 (D.S.C. 2011) (no proof of irreparable harm where party failed to establish "any evidence of lost goodwill, loss of market share, or price erosion."). Therefore, the court is unpersuaded by NFI's claim that its potential loss in market share warrants the need for injunctive relief.

Moreover, NFI argues that its reputation in the emu-based products business will be severely

4

damaged as a result of not being able to produce the quantity that is demanded by its retail clients and customers. The court finds such contention speculative and not supported by evidence. Suppliers, manufacturers, and businesses are often unable to meet the demands of the market. In other words, this is a common occurrence. Hence, whatever perceived injury to reputation that NFI contends will result based on its inability to fully meet the demands of emu-based products market does not constitute irreparable harm warranting injunctive relief. Finally, NFI claims that Pro Emu may be facing financial difficulties which would prevent it from fulfilling any monetary judgments. However, no evidence has been provided to support such a claim and therefore, this contention, at this time, is too speculative, to constitute irreparable harm. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1992) (irreparable harm must not be speculative, but rather actual and imminent).

The court also notes that Rule 65(b)(1)(B) requires that NFI's counsel certify in writing what efforts were made to give notice of the request for a temporary restraining order to Pro Emu and Binkley, as well as to show why such notice should not be required. Even if the court assumes that sufficient facts have been alleged showing that immediate and irreparable injury will result without injunctive relief, NFI has not certified in writing any efforts made to put Pro Emu and Binkley on notice of the motion, nor has it offered any reason as to why such notice should not be required in satisfaction of the "stringent restrictions" of Rule 65(b)(1). *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 438-39 (1974) (citation omitted). The requirements of Rule 65(b)(1) are not mere technical niceties that a court may disregard, but rather crucial safeguards of due process. *Tchienkou v. Net Trust* Mortg., No. 3:10-CV-00023, 2010 WL 2375882, at *1, (W.D.Va. June 09, 2010) (citation omitted). Nothing in

NFI's motion satisfies this requirement. Therefore, this failure constitutes a separate and independent basis for denying the request for this *ex parte* injunctive relief. Accordingly, NFI's request for a temporary restraining order is **DENIED**.

### B. Motion for Expedited Discovery and Preliminary Injunction

In the alternative, NFI seeks expedited discovery on the issues raised by NFI's request for injunctive relief. Specifically, NFI requests:

> (1) [N]o more than ten (10) interrogatories directed to whether: (1) Pro Emu has the resources (e.g., birds, processing capabilities, etc.) to fill NFI's orders for emu oil; (2) whether Pro Emu is selling emu oil to others without complying with the Agreement's requirement that NFI must first approve such sales; (3) whether Pro Emu has made unauthorized sales of emu oil or emu oil-based products to third parties; and (4) Pro Emu's financial status;
>
> (2) [Twenty] 20 documents requests directed to the same topics as the interrogatories as set forth above;
>
> (3) [N]o more than five (5) depositions, which shall include a Rule 30(b)(6) deposition of Pro Emu. The remaining depositions will consist of, at the least, Binkley; other principals and executives of Pro Emu; and possibly other Pro Emu employees;
>
> (4) [T]o the extent NFI determines that third-party discovery is necessary, NFI requests leave to serve such discovery under Rule 45. NFI does not request that the Court shorten the length of time to respond otherwise available for third parties to respond pursuant to Rule 45.

[DE-12], Mot. for TRO, PI, and Exp. Disc., p. 16. NFI states that the requested discovery may be completed within six weeks. [DE-12], Mot. for TRO, PI, and Exp. Disc., p. 16. NFI further requests that response times be reduced to fourteen (14) days for discovery directed to Pro Emu.

A request for expedited discovery is examined "on the entirety of the record to date and the reasonableness of the requests in light of all the surrounding circumstances." *Dimension Data North America, Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531 (E.D.N.C. 2005) (stating the standard, but

denying plaintiff's request because no motion for preliminary injunction was pending). Here, upon consideration, the court finds that expedited discovery is appropriate under the circumstances. However, the court will narrowly tailor the discovery to the following:

(1) No more than ten (10) interrogatories total directed to whether: (1) Pro Emu has the resources (e.g., birds, processing capabilities, etc.) to fill NFI's orders or emu oil; (2) whether Pro Emu is selling emu oil or emu-based products to other parties that would violate the terms as set forth in the Agreement; and (3) Pro Emu's financial status. NFI shall have fourteen (14) days to obtain responses to these interrogatories;

(2) Twenty (20) document requests directed to the same topics as the interrogatories as set forth above. NFI shall have fourteen (14) days to obtain responses to these requests for production of documents;

(3) No more than five (5) depositions, which shall include a Rule 30(b)(6) deposition of Pro Emu. The remaining depositions will consist of Binkley and other principals and executives of Pro Emu. The areas of inquiry shall be limited to topics as set forth above. Pro Emu and its principals and executives, who are the subject of these depositions, shall have twenty-one (21) days in which to appear.

A hearing on the Motion for Preliminary Injunction is set for **Tuesday, May 29, 2012, at 10:00 am in Wilmington, North Carolina**.

## II. CONCLUSION

Based on the aforementioned rationale, it is ORDERED, ADJUDGED, AND DECREED that:

(1) NFI's Motion for Temporary Restraining Order [DE-11] be **DENIED**;

7

(2) NFI's Motion for Expedited Discovery [DE-11] be **ALLOWED IN PART**; discovery shall be limited to the following:

(a) No more than ten (10) interrogatories total directed to whether: (1) Pro Emu has the resources (e.g., birds, processing capabilities, etc.) to fill NFI's orders or emu oil; (2) whether Pro Emu is selling emu oil or emu-based products to other parties that would violate the terms as set forth in the Agreement; and (3) Pro Emu's financial status. NFI shall have fourteen (14) days to obtain responses to these interrogatories;

(b) Twenty (20) document requests directed to the same topics as the interrogatories as set forth above. NFI shall have fourteen (14) days to obtain responses to these requests for production of documents;

(c) No more than five (5) depositions, which shall include a Rule 30(b)(6) deposition of Pro Emu. The remaining depositions will consist of Binkley and other principals and executives of Pro Emu. The areas of inquiry shall be limited to topics as set forth above. Pro Emu and its principals and executives, who are the subject of these depositions, shall have twenty-one (21) days in which to appear.

(3) NFI's Motion for Preliminary Injunction [DE-11] be HELD IN ABEYANCE. A hearing is set for **Tuesday, May 29, 2012, at 10:00 am, in Wilmington, North Carolina**, to determine whether preliminary injunctive relief is warranted in this case.

SO ORDERED.

This the 27th day of April, 2012.

JAMES C. FOX
Senior United States District Judge

8

Case 5:12-cv-00192-F   Document 17   Filed 04/27/12   Page 8 of 8